# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VESTIL STILES and KATHIE THOMPSON, survivors and next of kin of ERTIES EVELYN STILES, deceased,<br><br>        Plaintiffs,<br><br>v.<br><br>CHATTEM, INC., a corporation; WAL-MART STORES, INC., a corporation; and WAL-MART STORES EAST, LP, a limited partnership,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 10-CV-0598-CVE-TLW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Now before the Court is Plaintiffs' Motion to Remand and Brief in Support (Dkt. # 13). Plaintiffs Vestil Stiles and Kathie Thompson originally brought this action in the District Court in and for Tulsa County, State of Oklahoma. Dkt. # 2-1. On September 21, 2010, defendants Chattem, Inc. (Chattem), Wal-Mart Stores, Inc., and Wal-Mart Stores East, LP (collectively, the Wal-Mart defendants) removed to this Court on the basis of diversity jurisdiction. Dkt. # 2. Plaintiffs now ask the Court to remand this case to the District Court of Tulsa County because the removal effected by defendants was untimely and improperly based on plaintiffs' discovery responses.

## I.

Plaintiffs, survivors and next of kin of Erties Evelyn Stiles, allege that Chattem is the "manufacturer and distributor of a certain IcyHot Heat Therapy product (IcyHot)" and that the Wal-Mart defendants are "distributors of the product." Dkt. # 2-1, at 1. They further allege that application of IcyHot to the decedent caused her "severe, grievous and painful injuries, and resulted in her death." Dkt. # 2-1, at 1-2. On February 18, 2010, plaintiffs filed a lawsuit in Tulsa County

District Court alleging that, at the time of the decedent's purchase and use of the IcyHot, the product's defective and unreasonably dangerous condition resulted in medical expenses, pain and suffering, and death of the decedent. Id. at 2. Plaintiffs also claim that they have incurred medical and burial expenses and have suffered grief, loss of companionship, and pecuniary loss. Id. Based on those allegations, plaintiffs requested judgment against each defendant in excess of $10,000, as well as interest, costs, and "such other and further relief to which they are deemed entitled."[1] Id.

Chattem then filed a motion to clarify damages pursuant to OKLA. STAT. tit. 12, § 2009(H).[2] Dkt. ## 2-2, at 17. Chattem also sent requests for admission to plaintiffs, specifically requesting that they admit either that the amount in controversy did not exceed $75,000, and that neither plaintiffs nor anyone on their behalf would ask for damages in excess of that amount, or that they admit they were seeking more than $75,000 in damages.[3] Id. at 79. Plaintiffs objected both to the requests for admission and to the motion to clarify, arguing that § 2009(H) was unconstitutional. Dkt. ## 2, at

---

[1] Until 2009, OKLA. STAT. tit. 12, § 2008(A) required that a party not seeking a particular amount of damages state only that the damages sought were "in excess of $10,000" where appropriate. Parties seeking less than $10,000 were required to specify the amount of the damages sought to be recovered. Id. That section was amended in 2009 to require "[e]very pleading demanding relief for damages in money in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code [to] . . . set forth only that the amount sought as damages is in excess of the amount required for diversity jurisdiction . . . ."

[2] Defendants state in the notice of removal that the motion to clarify damages was filed "[p]ursuant to Plaintiffs' failure to comply with OKLA. STAT. tit. 12, § 2009(H)." Dkt. # 2, at 2. However, § 2009(H) merely provides a remedy for defendants where the amount of damages alleged is less than the amount required for diversity jurisdiction. Thus, the motion to clarify damages was based on plaintiffs' failure to comply with the pleading requirements of § 2008(A).

[3] Because of plaintiffs' failure to respond, Chattem also filed a motion to compel responses to the requests for admission. Dkt. # 2-2, at 56.

2

2; 2-2, at 49-50. The district court determined that § 2009(H) was unconstitutional,[4] but granted Chattem's motion to compel responses to its requests for admission. Id. On July 12, 2010, plaintiffs responded to the request for admissions, stating that they objected to each request on the ground that the information sought was not discoverable. Dkt. # 2-2, at 62-63. On September 7, 2010, plaintiffs submitted an amended response to the requests for admission. Id. at 90-91. In that amended response, plaintiffs denied the requests on the grounds that they had no way of knowing what the amount in controversy would be. Id. However, they stated that "[p]laintiffs note that the petition sues for wrongful death and cannot fathom a situation where damages in excess of $75,000 would not be a possibility in a death action." Id. at 90. On September 21, 2010, defendants filed a notice of removal asserting that both elements of diversity jurisdiction were present. Dkt. # 2.

## II.

Removal to federal court is possible for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28. U.S.C. § 1441. District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds . . . $75,000, exclusive of interest and costs, and is between . . . citizens of different [s]tates." 28 U.S.C. § 1332(a). Under [§ 1332], a party must show that complete diversity of citizenship exists between the adverse parties. Symes v. Harris, 472 F.3d 754, 758 (10th Cir. 2006). Thus, "in cases with multiple plaintiffs or multiple defendants, no plaintiff [may] be a citizen of the same state as any defendant. The key inquiry in establishing diversity is thus the 'citizenship' of each party to the action." Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 419 (3rd Cir. 2010). The

---

[4] OKLA. STAT. tit. 12, § 2009(H) was found unconstitutional because "it was part of the Comprehensive Lawsuit Reform Act of 2009 . . . which was unconstitutional as containing multiple subjects." Dkt. # 13, at 7.

3

burden is on the defendant to prove that the amount in controversy element of diversity jurisdiction has been satisfied. Martin v. Franklin Capital Corp., 251 F.3d 1284, 1289-90 (10th Cir. 2001).

Where a defendant chooses to exercise the right of removal, he must file a notice of removal "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . [or] after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). The term "other paper" in the second paragraph of § 1446(b) has been given an "embracive construction;" federal courts have held that items such as deposition answers, jury instructions, and documents produced in discovery constitute "other papers" for purposes of creating a second 30-day period of removability. E.g., Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1076-78 (10th Cir. 1999)(quoting 14C Charles Alan Wright et al., Federal Practice and Procedure § 3732 at 300-10 (3d ed. 1998)); Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 745 (3rd Cir. 1995); Burns v. Prudential Secs., Inc., 218 F. Supp. 2d 911, 915-17 (N.D. Ohio 2002). However, to justify removal, the "other paper" must provide a first opportunity to "ascertain[] that the case is one which is or has become removable," or the first clear sign that jurisdiction lies in federal court. 28 U.S.C. § 1446(b). "[G]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record." Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished)[5].

---

[5] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

**III.**

Plaintiffs have not challenged defendants' allegations of complete diversity in the notice of removal. However, "courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). The notice of removal states that plaintiffs are, and decedent was, residents of Oklahoma. Dkt. # 2, at 3. It further states that Chattem, Inc. is a foreign corporation headquartered in Tennessee, that Wal-Mart Stores, Inc. is a foreign corporation headquartered in Arkansas, and that Wal-Mart Stores East, LP is a foreign limited partnership, also headquartered in Arkansas. Id.

A corporation is deemed to be a citizen of any state in which it has been incorporated, as well as the states where it has its principal place of business. 28 U.S.C. § 1332(c)(1). In contrast, the Supreme Court has determined that the citizenship of a limited partnership depends on the citizenship of all its members. Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990). Therefore, "in order to effect removal under 28 U.S.C. § 1441(a) based on diversity of citizenship . . . a limited partnership must show that the citizenship of all its general and limited partners is diverse from the plaintiff." Jenkins, I. v. MTGLQ Investors, 218 F. App'x 719, 723 (10th Cir. 2007)(unpublished)[6].

Wal-Mart Stores, East is a foreign limited partnership. Thus, Carden requires defendants to show that the citizenship of each general and limited partner of Wal-Mart Stores, East is diverse from that of each adverse party. 494 U.S. at 195-96; see also Penteco Corp. Ltd. P'ship – 1985A v. Union Gas System, Inc., 929 F.2d 1519, 1523 (10th Cir. 1991). The notice of removal provides

---

[6] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

no information regarding the citizenship of the individual partners of Wal-Mart Stores, East. Defendants have failed to show whether the complete diversity requirement of § 1332 has been met, and that this Court has jurisdiction. However, under 28 U.S.C. § 1653, a court may permit amendment of defective jurisdictional allegations in a notice of removal. See Jenkins, I., 218 F. App'x at 723. Defendants will therefore be given the opportunity to amend their notice of removal to supply the necessary jurisdictional facts.

## IV.

The Court will now turn to plaintiffs' challenge to the notice of removal on the basis of timeliness. Plaintiffs' petition was filed in Tulsa County district court on February 18, 2010. Chattem was served on April 5, 2010, and the Wal-Mart defendants were served on April 21, 2010. Dkt. # 2, at 2. Defendants' notice of removal was filed September 21, 2010. Dkt. # 2. Thus, the notice of removal clearly occurred more than thirty days after defendants first received service of the petition. However, defendants argue that because the initial petition stated only that plaintiffs sought "in excess of $10,000" as to each defendant, the removable nature of the claim was not clear on the face of the petition. Dkt. # 16, at 4-5. Moreover, defendants claim that because plaintiffs were not responsive to requests to clarify the amount in controversy, it did not become clear that the case was removable until defendants received plaintiffs' amended responses to the requests for admission. Id. at 6. Defendants argue that the responses were an "other paper" for purposes of § 1446(b), and that their receipt of those responses on September 7, 2010, triggered the thirty-day removal period. Thus, they argue that the notice of removal filed September 21, 2010, was timely. Id. at 8.

### A.

Under 28 U.S.C. § 1332(a), a removing defendant has the burden of proving that the amount in controversy exceeds $75,000. "The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal. The burden is on the party requesting removal to set forth, in the notice of removal itself, the <u>underlying facts</u> supporting [the] assertion that the amount in controversy exceeds [$75,000]." <u>Laughlin v. K-Mart Corp.</u>, 50 F.3d 871, 873 (10th Cir. 1995)(internal citations omitted)(emphasis in original). Conclusory statements by the party seeking removal that the amount in controversy exceeds $75,000 are insufficient. <u>See id.</u>; <u>see also</u>, e.g., <u>Gaus v. Miles, Inc</u>, 980 F.2d 564 (9th Cir. 1992). Thus, where the face of the complaint does not affirmatively establish the requisite amount in controversy, a removing defendant must set forth, in the removal documents, not only the defendant's good faith belief that the amount in controversy exceeds $75,000, but also an analysis of plaintiff's claims for damages to prove the jurisdictional amount. <u>Chidester v. Kaz, Inc.</u>, No. 07-CV-0084-CVE-PJC, 2007 WL 1087728, at * 2 (N.D. Okla. April 9, 2007)

The Tenth Circuit Court of Appeals clarified the burden on a defendant seeking to prove the jurisdictional amount for removal purposes in <u>McPhail v. Deere & Co.</u>, 529 F.3d 947 (10th Cir. 2008). In <u>McPhail</u>, the Tenth Circuit noted the inequity of allowing plaintiffs to gain jurisdiction in federal court by merely alleging that the amount in controversy exceeded the jurisdictional amount but allowing defendants to gain federal jurisdiction only after proving the amount by a preponderance of the evidence. 529 F.3d at 953. The court was particularly concerned by the lack of information typically available to defendants seeking to remove a case, and the need to protect the interests of those parties. <u>Id.</u> As a result, it concluded that although a defendant seeking removal has the burden of establishing jurisdictional facts by a preponderance of the evidence, "jurisdiction

7

itself is a legal conclusion, a <u>consequence</u> of facts rather than a provable fact." <u>Id.</u> at 954 (citing <u>Meridian Security Ins. Co. v. Sadowski</u>, 441 F.3d 536, 540-43 (7th Cir. 20006))(emphasis in original). Thus, once the requisite jurisdictional facts are established by a preponderance of the evidence, "a defendant is entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake. If the amount is uncertain then there is potential controversy, which is to say that at least $75,000 is in controversy in the case." <u>Id.</u> at 954.

Here, both parties appear to agree that the petition states claims in excess of the jurisdictional amount.[7] However, the Court must independently assess whether defendants have met their burden in establishing facts that support a finding that the amount in controversy is potentially $75,000. Plaintiffs' petition stated only that plaintiffs sought "in excess of $10,000" from each of the defendants. Dkt. # 2-1, at 2. "In the absence of an explicit demand for more than $75,000, the defendants must show how much is in controversy through other means." <u>McPhail</u>, 529 F.3d at 955. They may do so by estimating potential damages based on the allegations in the complaint, by examining statements by plaintiff, or by relying on other supporting documentation. <u>Id.</u> at 955-56.

In <u>McPhail</u>, the Tenth Circuit held that a complaint seeking recovery under the Oklahoma wrongful death statute based on the allegedly defective design of a product "may be sufficient by itself to support removal." <u>Id.</u> at 957. The court also considered correspondence from plaintiff's counsel, incorporated in the notice of removal, which stated that the amount in controversy "very

---

[7]  Although plaintiffs do not assert that they are in fact seeking in excess of the jurisdictional amount, they argue that defendants had only to show that there was a "possibility" that $75,000 was at issue as a result of their wrongful death action. Dkt. # 13, at 5-6. Plaintiffs state that "it is hard, if not impossible, to imagine a situation where survivors entitled to grief and loss of companionship . . . would not have put the possibility of $75,000 in damages in play." <u>Id.</u> at 6. Therefore, plaintiffs argue that "the face of the petition puts into controversy the jurisdictional amount sought by [d]efendants." <u>Id.</u>

8

well may be" in excess of $75,000.  Id.  Based on both the nature of the allegations in the complaint and the statement by counsel, the court concluded that defendant had proved the facts necessary to establish that more than $75,000 was in controversy.  Id.

Plaintiffs' petition is similar to that in McPhail.  It is based on a theory of defective product design that led to "severe, grievous and painful injuries" and resulted in the death of the decedent. Dkt. # 2-1, at 2.  Although plaintiffs did not provide a statutory basis for the claims in their petition, both the allegations of the petition and plaintiffs' discovery responses make clear that their case is based in part on a wrongful death theory.  Under Oklahoma law, the following elements of damages are recoverable in a wrongful death action:

> The loss of consortium and the grief of the surviving spouse, which shall be distributed to the surviving spouse.
>
> The mental pain and anguish suffered by the decedent, which shall be distributed to the surviving spouse and children, if any, or next of kin in the same proportion as personal property of the decedent.
>
> The pecuniary loss to the survivors based upon properly admissible evidence with regard thereto including, but not limited to, the age, occupation, earning capacity, health habits, and probable duration of the decedent's life, which must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin, and shall be distributed to them according to their pecuniary loss.
>
> The grief and loss of companionship of the children and parents of the decedent, which shall be distributed to them according to their grief and loss of companionship.

OKLA. STAT. tit. 12, § 1053(B).

The parties have not identified the relationship between plaintiffs and the decedent.[8] However, plaintiffs bring their claims as "next of kin" to the decedent, entitling them at least to compensation for mental pain and anguish suffered by the decedent, and for their own pecuniary loss. As noted in McPhail, the potential for recovery on that basis "may be sufficient by itself to support removal."[9] Id. at 957. However, defendants' notice of removal is also supported by plaintiffs' discovery responses, which stated that they could not "fathom a situation where damages in excess of $75,000 would not be a possibility in a death action." Dkt. # 2, at 2-3. That statement is more definitive as to the value of plaintiffs' claims than the statement in McPhail that the amount claimed "may very well be" in excess of $75,000. 529 F.3d at 957. Thus, the Court finds that defendants' notice of removal established by a preponderance of the evidence facts sufficient to raise a possibility that the amount in controversy exceeds $75,000. Because plaintiffs both make their claims as "next of kin," that finding applies to both plaintiffs, as required in multiple plaintiff cases. See Lovell v. State Farm Mut. Auto. Ins. Co., 466 F.3d 893, 897 (10th Cir. 2006)(noting that in multiple plaintiff cases, each plaintiff must individually satisfy the amount in controversy requirement).

---

[8] Plaintiffs' only statement as to the relationship is their argument that "[i]t is hard, if not impossible, to imagine a situation where survivors entitled to grief and loss of companionship under [§ 1053] would not have put the possibility of $75,000 in damages in play." Dkt. # 13, at 6. A footnote to that statement argues that "[§ 1053] allows these damages only to the parents and children of the decedent, thus establishing proximity of kinship." Dkt. # 13, at 6 n.1.

[9] In McPhail, the court's conclusion that the complaint may have been sufficient to establish that the amount in controversy exceeded the jurisdictional amount was based in part on the request for punitive damages. Plaintiffs are not seeking punitive damages in this case.

**B.**

The question then becomes at what point defendants had knowledge that the amount in controversy exceeded $75,000. Defendants argue that they were not aware of that fact until they received plaintiffs' amended discovery responses. Plaintiffs argue that, based on the wrongful death nature of the action, the amount in controversy was clear from the face of the complaint according to McPhail. Therefore, they argue, the action should be remanded because defendants' notice of removal was untimely.

However, McPhail did not decide that a complaint alleging a wrongful death action would be sufficient; instead, it noted that it "may be sufficient by itself to support removal." 529 F.3d at 957 (emphasis added). But the court in that case did "not decide the question based on the complaint alone" because it also had before it correspondence from counsel indicating that the amount in controversy might exceed $75,000. Id. The court therefore stated that "[e]ven assuming the amount in controversy was not apparent from the face of the complaint," other information provided enough supplementary evidence to conclude that the jurisdictional amount had been established. Id. Thus, McPhail is not controlling as to whether the fact of a wrongful death claim alone establishes the jurisdictional amount on the face of the petition. Other courts have reached different conclusions regarding that question. Compare Borquez v. Brink's Inc., No. 3:10CV380-O, 2010 WL 931882, at * 5 (N.D. Tex. March 12, 2010)(finding that wrongful death claim "affirmatively reveal[ed] on [the face of the complaint] that the damages sought exceeded $75,000") with Dominguez v. Peek, No. 09-0090-KD-B, 2009 WL 1423405, at * 2 (S.D. Ala. May 15, 2009)(remanding case on the ground that it was not apparent solely from the face of a complaint alleging a wrongful death claim that the amount in controversy exceeded $75,000).

The Court does not find that defendants had notice of the amount in controversy sufficient to trigger the removal period at the time of service. The nature of a plaintiff's claims may be relied upon in support of a notice of removal. See McPhail, 529 F.3d at 955-56. However, the paucity of facts in the petition as to plaintiffs' claims or plaintiffs' relationship to the decedent may have made it difficult for defendants to establish by a preponderance of the evidence that plaintiffs' petition alleged in excess of $75,000. Moreover, unlike McPhail, plaintiffs are not seeking punitive damages in this case, thereby eliminating another basis for determining that the jurisdictional amount was clear on the face of the petition. Indeed, it is almost certain, as defendants argue, that had they moved immediately for removal, plaintiffs would have made "an alternative motion to remand for lack of specific facts in support of jurisdiction." Dkt. # 16, at 5.

Both Oklahoma law and the local rules of this Court provide defendants with means by which to clarify damages sought where a plaintiff does not initially seek a specific jurisdictional amount. Under Oklahoma law,

> [i]f the amount of damages sought to be recovered by the plaintiff is less than the amount required for diversity jurisdiction . . . the defendant may file, for purposes of establishing diversity jurisdiction only, a Motion to Clarify Damages . . . to require the plaintiff to show by a preponderance of the evidence that the amount of damages, if awarded, will not exceed the amount required for diversity."

OKLA. STAT. tit. 12, § 2009(H).[10] Similarly, local rules of civil procedure require that "where the face of the state court petition does not contain an express damages clause as to at least one claim asserted by at least one plaintiff, in an amount exceeding $75,000," defendants must set forth a particularized statement of facts upon which the jurisdictional amount is based, or serve a discovery

---

[10] As noted, this provision was found unconstitutional because of a rule prohibiting multi-subject legislation. Dkt. ## 13, at 6-7; 16, at 3.

12

request upon plaintiff, such as an interrogatory or request for admission, asking whether he seeks more than $75,000 in damages. LCvR 81.3 (defendants must attach discovery responses from at least one plaintiff as to the amount in controversy).

After receipt of service by both Chattem and the Wal-Mart defendants, Chattem filed a motion to clarify damages. Plaintiffs refused to respond to the motion, and Chattem filed a motion to compel, which was granted. Dkt. # 2-2, at 56. Plaintiffs' first response to the discovery requests stated only that they objected to each request on the ground that the information sought was not discoverable. Id. at 62-63. Finally, on September 7, 2010, plaintiffs amended their responses to say that although they had no way of knowing what the amount in controversy would be, they "could not fathom" the amounts sought being less than $75,000. Id. at 90-91.

"While plaintiff's refusal to provide discovery responses does not provide an independent basis for removal, it can be a factor in the Court's determination that the amount in controversy requirement is satisfied." Torres v. Cintas Corp., No. 08-CV-0185-CVE-PJC, 2008 WL 2510133, at * 4 (N.D. Okla. June 19, 2008); see also Rubel v. Pfizer, Inc., 361 F.3d 1016, 1020 (7th Cir. 2004); Wilbanks v. North Am. Coal Corp., 334 F. Supp. 2d 921, 925-26 (S.D. Miss. 2004); Schwenk v. Cobra Mfg. Co., 322 F. Supp. 2d 676, 680 (E.D. Va. 2004). Here, the Court finds that plaintiffs' refusal to respond to discovery concerning the amount in controversy is a relevant factor in the Court's analysis. If plaintiffs' damages exceeded $75,000, they should have responded to the requests for admission and clearly stated their position; that they refused to do so severely undermines their current argument that the jurisdictional amount was clear from the face of the petition. As one federal court has stated, a plaintiff's refusal to respond to jurisdictional discovery is often an attempt to "'have it both ways' by pursuing [a] diversity case in state court without

13

limiting himself to damages below the threshold amount that triggers the [d]efendant's right to remove the case to this Court." Logsdon v. Duron, Inc., No. 3:05CV2431J-16HTS, 2005 WL 1163095, *4 (M.D. Fla. May 17, 2005). That kind of tactic was criticized in McPhail, where the court noted the danger of plaintiffs frustrating the purposes of diversity jurisdiction by refusing to state a jurisdictional amount. 529 F.3d at 955. This Court has not previously held that merely because a petition stated a wrongful death claim, the removal period was triggered upon service. See, e.g., Chidester, 2007 WL 1087728, at * 4-5 (considering facts beyond a petition stating claims for wrongful death, such as responses to discovery requests, to establish proof of the jurisdictional amount). Nor is such an approach warranted in this case. Given the brevity of the claims stated in the petition, defendants' removal period was not triggered by defendant's initial receipt of service, but rather by plaintiffs' amended responses to defendants' requests for admission.[11] Thus, defendants' notice of removal was timely filed, and federal jurisdiction is appropriate.

---

[11] Plaintiffs argue that their responses to the requests for admission were not proper evidence on which to rely in determining the jurisdictional amount because the requests were denied, and therefore have no effect for evidentiary purposes. Dkt. # 13, at 7. However, McPhail makes clear that "documents that demonstrate plaintiff's own estimation of its claim are a proper means of supporting the allegations in the notice of removal," 529 F.3d at 956, and other courts have determined that discovery responses are appropriate "other paper" for purposes of § 1446 (b). See, e.g., Huffman, 194 F.3d at 1078. Moreover, the relevant local rule states explicitly that receipt of a discovery response from a plaintiff "shall constitute the receipt of a 'paper from which it may first be ascertained that the case is one which is or has become removable' within the meaning of 28 U.S.C. § 1446(b)." LCvR81.3. The Court therefore rejects plaintiffs' arguments that their responses to the requests for admission could not serve to trigger the removal period of § 1446(b). Dkt. # 13, at 7-8.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand and Brief in Support (Dkt. # 13) is **denied**.

**IT IS FURTHER ORDERED** that defendants shall **amend the notice of removal** to show complete diversity of citizenship by close of business on **January 14, 2011**.

**DATED** this 11th day of January, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT